UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDREW GUERRA,

                Plaintiff,

     -against-                              3:21-CV-00459 (LEK/ML)

DANIEL SWANSTROM
and ITHACA COLLEGE,

                Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Andrew Guerra commenced this action on April 23, 2021, alleging negligence against Ithaca College football program head coach Daniel Swanstrom ("Swanstrom"), and Ithaca College (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff's claim arises from a head injury he suffered during preseason football practice. See Compl. ¶ 1.

Now before the Court is a motion for summary judgment, Dkt. No. 39-24 ("Motion"), along with a statement of material facts, Dkt. No. 39-23 ("Statement of Material Facts" or "SMF"), filed by Defendants. Plaintiff has filed a response and statement of material facts in opposition to the Motion. Dkt. No. 42 ("Response"); Dkt. No. 42-1 ("Response to Statement of Material Facts" or "RSMF"). Defendants have submitted a reply. Dkt. No. 47 ("Reply"). For the reasons that follow, Defendants' Motion is denied.

### II.    BACKGROUND

#### A.  NCAA Bylaws in Place in August 2019

Per the NCAA bylaws in place in August 2019 ("2019 Bylaws"), all student-athletes are required to undergo a five-day acclimatization period prior to the season, including the first five

days of preseason practice.[1] Dkt. No. 39-13 ("Exhibit D") at 3.

Under the 2019 Bylaws, student-athletes also may not engage in more than one on-field practice and one walk-through session during the acclimatization period, and these "shall be limited to a combined total of four hours per day *with the practice session not to exceed three hours*." Mot. at 5 (emphasis added). Following this acclimatization period, practices are likewise limited to one on-field practice per day not to exceed three hours. Id. at 6. Furthermore, the 2019 Bylaws state that student-athletes shall not engage in more than one on-field practice per day, both during and after the acclimatization period. See id. at 5–6.

Finally, the 2019 Bylaws highlight that during the five-day acclimatization period, student-athletes must have at least three hours of continuous recovery time between sessions, including on-field practice or a walk-through. See Exhibit D at 3. Following the five-day acclimatization period, student-athletes must likewise "be provided with at least three hours of continuous recovery time between an on-field practice session and a walk-through. During this time, student-athletes may not attend any meetings or engage in other athletically related activities (e.g., weightlifting)." Id. at 4. The Court notes that both Plaintiff and Defendants interpret the 2019 Bylaws as requiring three hours of recovery time between the end of football practice and the beginning of weightlifting. See Resp. at 14; see also Mot. at 10–11.

**B. Factual History**

*1. Events Preceding August 19, 2019*

Plaintiff, a first-year Ithaca College student, joined the college's football team and began

---

[1] Here, August 19, 2019, was the fifth day of Ithaca College's preseason practice—i.e., the final day of the five-day acclimatization period. See Dkt. No. 39-21 ("Exhibit A") at 5. August 20, 2019, and August 21, 2019, were, respectively, the sixth and seventh days of preseason practice, and therefore were no longer within the acclimatization period. Id. at 8, 10.

preseason football activities in August 2019. SMF ¶¶ 1–2. On August 14, 2019—prior to participating in any practice sessions—Plaintiff "signed an acknowledgment of risk form, acknowledging the risk of head injury and concussion associated with football." SMF ¶ 3. According to Plaintiff, the form "did not advise, and Plaintiff did not sign off on, Defendants' negligence in violating the NCAA Bylaws required to keep players safe." Id.

On August 18, 2019, Plaintiff practiced with the first-year football players ("First-Years"). SMF ¶ 7. Plaintiff "was a top prospect and performed well," and was asked to return for another practice session with the Returning players ("Returners") on the following day, August 19. Id. ¶ 7–8. Plaintiff, however, states he was "never informed or instructed that" his August 19 practice sessions with both the First-Years and the Returners "would constitute one continuous practice." RSMF ¶ 7.

### 2. *August 19, 2019*

Plaintiff and Defendants disagree about the events that occurred on August 19, 2019. Defendants state that the First-Year practice was rescheduled to start at 11:00 AM. SMF ¶¶ 9–10. Defendants state that this rescheduling occurred because it had rained during the prior days. Id. ¶ 9. Defendants assert that the grass fields typically used were wet and would have been damaged had the team practiced on them. Mot. at 9. Consequently, the football team practiced on the College's artificial turf field when other Ithaca College teams with priority were not utilizing the field. Id.

Plaintiff, however, contests that practice was rescheduled. RSMF ¶ 9. Swanstrom testified that the reason practice started at 11:00 AM was because players were meetings, yet Plaintiff maintains that players were not held in meetings from 8:30 AM to 11:00 AM. Id. Further, Plaintiff notes the lack of evidence supporting the assertion that practice started at 11:00

AM, specifically noting that there no text messages were sent to the players rescheduling practice, see id. ¶ 15; Resp. at 10–11, and that the videos of practice provided by Defendants do not indicate the exact time that Plaintiff began practice, see RSMF ¶ 11. Plaintiff asserts instead that "[p]ractice was on the turf field and began right after the position meetings, which at the latest would have been 10 a.m." Dkt. No. 44 ("Guerra Declaration") ¶ 13.

Defendants maintain that the Returners arrived at the field and joined practice at 11:45 AM. SMF ¶ 11. However, Plaintiff disagrees with this characterization by pointing out that Returners did not "join" the First-Years, but rather began stretching and warming up while the First-Years completed practice. RSMF ¶ 11. Plaintiff states that this is apparent in the videos of practice provided by Defendants, which do not display the exact time that Returners began stretching. Id.

According to Defendants, the First-Year players who were not asked to continue practicing with the Returners were dismissed at noon. SMF ¶ 12. Defendants state that Plaintiff did not leave the practice field when the other First-Years left; instead, he "took a short break and had a drink while the Returners stretched and then continued to practice." Id. ¶ 14. While Plaintiff agrees that the remaining First-Years were dismissed and that Plaintiff stayed to practice with the First-Years and Returners, he asserts that there is not enough evidence to know the exact timing of these events. RSMF ¶¶ 11–12.

Thus, Defendants and Plaintiff disagree about how long Plaintiff practiced on August 19, 2019. Defendants maintain that they did not violate 2019 Bylaws because Plaintiff was on the practice field for less than three continuous hours. SMF ¶ 16. Defendants specifically assert that the remaining First-Years and the Returners practiced until 1:40 PM, id. ¶ 13, and that, therefore, no student-athlete was on the field for more than two hours and forty minutes, Mot. at 9. Further,

Defendants assert that Plaintiff does not know how long he practiced on August 19, 2019, based on his deposition. SMF ¶ 17.

Plaintiff, however, strongly contests this characterization. Plaintiff first asserts that Swanstrom is contradicting his previous testimony; Swanstrom initially testified that the practice ended at 1:50 PM—and not 1:40 PM. See RSMF ¶¶ 13, 15; see also Dkt. No. 39-2 90:8–11, 104:11, 106:4. Plaintiff also argues that, while he did not know the exact length of practice, the practice session could have started no later than 10:00 AM. RSMF ¶¶ 13, 15. Accordingly, Plaintiff asserts that the practice session on August 19, 2019, could not have been shorter than three hours. Id. ¶ 17.

However, Defendants and Plaintiff do not dispute that the First-Year weightlifting session, which took place after practice, was rescheduled to 5:00 PM. SMF ¶ 18; RSMF ¶ 18. Defendants maintain this rescheduling occurred to ensure that players had three hours of rest between the end of practice and weightlifting. SMF ¶ 18.

Plaintiff was asked on August 19, 2019, to practice with both the First-Years and the Returners again the following day, August 20, 2019. Defendants assert that Plaintiff was asked to stay and *continue practicing* with the Returners. Id. ¶ 19 (emphasis added). Plaintiff maintains that he was never informed or instructed that these two sessions would constitute one continuous practice. RSMF ¶ 19.

### 3.  *August 20 and 21, 2019*

Defendants and Plaintiff disagree about whether Plaintiff practiced for less than three hours on August 20, 2019. Defendants assert that Plaintiff's deposition indicates he was unaware how long he practiced that day. SMF ¶ 23. While conceding that he made such a statement in his deposition, Plaintiff asserts that the testimony provided by himself and fellow student-athlete

Jacob Cole contains "enough evidence to show that practice ended around 12:30," meaning that practice must have lasted around three hours and forty-five minutes. RSMF ¶ 23.

Neither party disputes that practice for First-Years began at 8:45 AM. SMF ¶ 20; RSMF ¶ 20. However, Defendants and Plaintiff disagree what time Plaintiff joined practice. Defendants assert that all First-Years who were asked to continue practice with the Returners, including Plaintiff, were held in team meetings and did not join practice until 9:05 AM. SMF ¶ 21. Plaintiff denies joining practice later than other players, stating that he was neither asked to join nor held in team meetings longer than other players. See RSMF ¶ 21.

The parties also dispute when practice ended on August 20, 2019. Defendants state that practice ended at 11:50 AM. SMF ¶ 22. However, Plaintiff testified that practice ended around 12:30 PM. RSMF ¶ 22.

Plaintiff was again asked to practice with First-Years and Returners the next day, August 21, 2019. Defendants maintain that Plaintiff was asked to stay and *continue practicing* with the Returners. SMF ¶ 25 (emphasis added). Plaintiff again states that he was neither informed nor instructed that the First-Year and Returner sessions would constitute one continuous practice. RSMF ¶ 25. Plaintiff later attended the August 21, 2019 First-Years and Returners practice.[2] See SMF ¶ 30; RSMF ¶ 30.

### 4. Events Following August 21, 2019

It is undisputed that, after practice on August 21, 2019, Plaintiff began to experience concussion symptoms. See SMF ¶ 32; RSMF ¶ 32. Plaintiff and Defendants also do not dispute

---

[2] The Court notes that it is undisputed that Plaintiff did not practice for more than three hours on August 21, 2019. It is also undisputed that Plaintiff did not lift weights on August 21, 2019. See SMF ¶ 30; RSMF ¶ 30. Accordingly, no party has raised the issue of whether Plaintiff received the requisite three hours of continuous recovery time between practice and weightlifting on this date.

that Plaintiff suffered a concussion. <u>See</u> SMF ¶ 34; RSMF ¶ 34. Defendants assert that "the question is not whether Mr. Guerra incurred an injury on August 21, 2019, but whether the cause of that injury was something other than the known risks of football." Mot. at 19. Defendants specifically note that, during Plaintiff's participation in preseason practices, he never informed any athletic trainer or coach that he was fatigued or tired. SMF ¶ 31. Plaintiff counters that, although he was fatigued and exhausted, he nonetheless "felt there was no need at that time to report anything" until he "knew something was wrong on August 22, 2019," <u>id.</u>, at which time he reported his symptoms to the College's athletic trainers. SMF ¶ 34; RSMF ¶ 34.

Plaintiff asserts he has been severely and permanently injured, has suffered excruciating pain and suffering and emotional trauma, and demands judgment against Defendants for "a substantial amount of money." Compl. ¶¶ 72, 87.

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation, or conjecture, Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and "eschew credibility assessments," Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

To successfully raise a negligence claim under New York Law,[3] a plaintiff must show "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3)

---

[3] Plaintiff has invoked the Court's diversity jurisdiction over this case. Compl. ¶ 18. "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Boelter v. Hearst Commc'ns, Inc., 192 F. Supp. 3d 427, 443 (S.D.N.Y. 2016) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "New York gives 'controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has

injury to the plaintiff as a result thereof." <u>Akins v. Glens Falls City Sch. Dist.</u>, 53 N.Y.2d 325,

333 (1981) (citing WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 30, at 143 (4th ed.

1971)). New York is a comparative negligence jurisdiction whereby recovery for personal

injuries may be allocated between parties based upon their attributable culpable conduct. <u>See</u>

<u>Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.</u>, 113 F.3d 296, 300 n.6 (2d Cir. 1997)

(citing N.Y. C.P.L.R. § 1411 (McKinney 2023)).

> Plaintiff maintains that:

>> The defendants violated the above-cited NCAA bylaws by having
>> the plaintiff practice twice per day and practice for more than three
>> hours, as well as preventing the plaintiff from receiving the required
>> three hours of recovery time between practice and weightlifting. The
>> defendants' violations created a dangerous condition that
>> unreasonably increased the risks inherent to the sport of football.
>> The negligence of the defendants caused the plaintiff to experience
>> more significant blows to the head without the required recovery
>> time, risks that were above and beyond any assumed risks that were
>> inherent in the sport.

Resp. at 21.

> Defendants, meanwhile, argue that Plaintiff expressly assumed the risk of concussion

while practicing football, thus absolving Defendants' duty to Plaintiff. <u>See</u> Mot. at 15–17.

Consequently, Defendants assert that "Plaintiff has not shown that his injury was incurred due to

anything except the known risks of college football." <u>Id.</u> at 5. Defendants further argue that there

---

the greatest concern with the specific issue raised in the litigation.'" <u>Nuss v. Sabad</u>, 976 F. Supp.
2d 231, 241 (N.D.N.Y. 2013) (Kahn, J.) (quoting <u>Babcock v. Jackson</u>, 191 N.E.2d 279, 283–84
(N.Y. 1963)). Here, Plaintiff is a citizen of Massachusetts, Compl. ¶ 5, Defendant Swanstrom is
a citizen of New York, Answer ¶ 7, and Defendant Ithaca College is duly organized and existing
under the laws of New York, with its principal place of business in New York, <u>Id.</u> ¶ 10. Each of
the alleged negligent acts giving rise to the alleged injury occurred within the boundaries of New
York State. <u>See</u> Compl. ¶¶ 8, 13. Defendants do not contest Plaintiff's assertion that New York
law applies to this action, <u>see</u> Resp. at 17–18, and, in any event, the Court agrees with Plaintiff,
<u>see</u> <u>Allstate Vehicle & Prop. Ins. Co. v. Scott</u>, 450 F. Supp. 3d 230, 235–36 (N.D.N.Y. 2020).

are no genuine disputes of material fact regarding Plaintiff's claims that Defendants' violated

2019 Bylaws, because there is no admissible evidence to that effect. Id. at 4. Finally, Defendants

contend that, even if these allegations of duty and breach could be proven, "there is no

admissible evidence to causally connect the alleged violation and the alleged injury." Id. at 5.

The Court addresses these arguments in turn.

### A. Defendants' Duty of Care and Plaintiff's Assumption of Risk

"Application of the personal injury principles of duty, breach and proximate cause in the

context of sports injuries almost invariably includes a discussion also of assumption of risk."

Benitez v. N.Y.C. Bd. of Educ., 73 N.Y.2d 650, 656–57 (1989). Under New York law, a person

who participates in athletic and recreational activities may properly be held to have consented—

i.e., to have assumed the risk—to "those injury-causing events which are known, apparent or

reasonably foreseeable consequences of the participation." Turcotte v. Fell, 68 N.Y.2d 432, 439

(1986) (citation omitted). The New York State Court of Appeals has "retained a form of the

primary assumption of risk doctrine, applicable only in a narrow set of circumstances" since

New York's adoption of a comparative fault regime via CPLR article 14 in 1975. Grady v.

Chenango Valley Cent. Sch. Dist., 2023 WL 3102723, at *1 (Apr. 27, 2023). CPLR 1411

provides that:

> In any action to recover damages for personal injury, injury to
> property, or wrongful death, the culpable conduct attributable to the
> claimant or to the decedent, *including contributory negligence or
> assumption of risk, shall not bar recovery,* but the amount of
> damages otherwise recoverable shall be diminished in the
> proportion which the culpable conduct attributable to the claimant
> or decedent bears to the culpable conduct which caused the
> damages.

N.Y. C.P.L.R. § 1411 (McKinney 2023) (emphasis added).

The application of the primary assumption of the risk doctrine should, generally, be

limited to "cases appropriate for absolution of duty, such as personal injury claims arising from sporting events, sponsored athletic and recreative activities, or athletic and recreational pursuits that take place at designated venues." Custodi v. Town of Amherst, 20 N.Y.3d 83, 89 (2012). As it relates to athletic activities, "primary assumption of the risk applies when a consenting participant in a qualified activity 'is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks.'" Id. at 88 (quoting Bukowski v. Clarkson Univ., 19 N.Y.3d 353, 356 (2012)); see also Turcotte, 68 N.Y.2d at 439 ("If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty.").

However, and notably, a participant is not deemed to have assumed risks that either (1) resulted from the reckless or intentional conduct of others or (2) were "concealed or unreasonably increased." Morgan v. State of New York, 90 N.Y.2d 471, 485 (1997) (citing Benitez, 73 N.Y.2d at 658). There, in seeking to establish liability in the context of an athletic activity, a plaintiff may raise a triable issue of fact that defendants' conduct was a "flagrant infraction [of the rules of the sport] unrelated to the normal method of playing the game and . . . without any competitive purpose." Butchello v. Herberger, 145 A.D.3d 1586, 1588 (N.Y. App. Div. 2016).

### 1. Express Assumption of Risk

Defendants maintain that Plaintiff expressly assumed the risk of injury by signing an express assumption of risk form. Reply at 5. "Express assumption of risk may exist when there is an 'agreement in advance that defendant need not use reasonable care for the benefit of plaintiff and would not be liable for the consequence of conduct that would otherwise be negligent.'" Walker, 2012 WL 5880682, at *10 (quoting Integrated Waste Servs., Inc., 113 F.3d at 301); see Arbegast v. Board of Educ., 65 N.Y.2d 161, 169 (1985).

11

Although Plaintiff does not dispute that he signed the required acknowledgment of risk form, Plaintiff maintains that he "never acknowledged that the defendants would violate NCAA Bylaws and thereby expose him to unreasonably increased risks." Resp. at 7. Plaintiff maintains that Defendants violated 2019 Bylaws when Defendants (1) required Plaintiff to practice for more than three hours per day on both August 19, 2019, and August 20, 2019; (2) required Plaintiff to practice two times per day on August 19, 20, and 21, 2019; and (3) failed to provide Plaintiff with three hours of recovery time between practice and weightlifting on August 20, 2019. Id. at 5. Thus, Plaintiff states that he did not assume the risk of injury because Defendants' negligence unreasonably increased his risk of injury by violating 2019 Bylaws. Id. at 5, 22.

## 2. *Assumption of Risk Based on Inherent Risk of Injury*

Defendants also argue that assumption of the risk applies here because of the risk "inherent in team competitive sports, especially football." Mot. at 16 (quoting Benitez, 73 N.Y.2d at 659). To support this assertion, Defendants rely on four cases in which New York Courts applied assumption of risk to bar claims by plaintiffs who suffered injuries within the standard confines of football games and practices.[4] See id. at 16–17.

When resolving all inferences in the instant case in favor of Plaintiff, the Court finds that a reasonable jury could similarly conclude that Defendants' actions constituted a breach of sound coaching practices and thus subjected Plaintiff to an unreasonably increased risk of injury. The Court agrees with Plaintiff that, when viewed in the light most favorably to Plaintiff, the four cases Defendant cites are inapposite to the factual circumstances here. The plaintiffs in those cases were not subjected to concealed or unreasonably increased risk. In this case, however, a

---

[4] Those cases are Benitez, 73 N.Y.2d; Butchello, 145 A.D.3d; Hagan v. Northport-Ease Northport Union Free School District No. 4, 273 A.D.2d 441 (N.Y. App. Div. 2000); and Serrell v. Connetquot Central School District of Islip, 19 A.D.3d 683 (N.Y. App. Div. 2005).

reasonable jury could credit Plaintiff's testimony that Defendants' "negligent failure to follow the rules subjected [him] to an unreasonably increased risk of injury." Resp. at 21. A reasonable jury might also accept Plaintiff's assertion that the football practices were conducted in violation of the 2019 Bylaws, and that these violations "created a dangerous condition that unreasonably increased the risks inherent to the sport of football." Id. In other words, because there is a genuine dispute over facts that are material to the question of whether Plaintiff was exposed to risks beyond those inherent in his participation in the sport, the Court declines to grant summary judgment based on the assumption of risk doctrine.

### B.  Breaches of Defendants' Duty of Care

In addition to arguing that Plaintiff's claims are barred under the assumption of risk doctrine, Defendants argue that Plaintiff has not provided any admissible evidence that Defendants breached their duty of care by violating 2019 Bylaws. See Mot. at 18–19. Conversely, Plaintiff argues that there is a genuine dispute over the fact of Defendants' compliance with the 2019 Bylaws, and has provided testimony that effect. For the reasons that follow, the Court finds that there is a genuine dispute of material fact regarding Defendants compliance with the 2019 Bylaws, and therefore denies summary judgment on the issue of breach.

### 1.  Length of Plaintiff's August 19 and 20 Practices

Defendants assert that Plaintiff was on the practice field for less than three hours on August 19, 2019, and August 20, 2019, id. at 8, and, further, that there is no admissible evidence that these practices exceeded the time permitted by 2019 Bylaws, id. at 18–19. Defendants state that the "[u]ndisputed evidence, some of which was produced by the Plaintiff himself, demonstrates that the schedule was adjusted for various reasons over the course of the [] days in question." Id. at 8.

13

Moreover, Defendants contend that Plaintiff's "declaration contradicts his sworn deposition" regarding the length of the football practices on August 19, 2019, and August 20, 2019. Reply at 8. Defendants state that Plaintiff "repeatedly testified that he did not know how long he was on the practice field on the [] days in question." Mot. at 18. Therefore, Defendants assert that, "[i]n his declaration, Mr. Guerra now proposes to testify to questions he specifically stated he could not answer at his deposition." Reply at 7. They argue that this contradiction means there is no genuine dispute over material facts, because "a party may not avoid summary judgment by submitting a declaration in opposition to summary judgment that contradicts his sworn deposition testimony." Id. at 8

Plaintiff, however, asserts that there exist triable issues of fact related to the length of the football practices on both August 19, 2019, and August 20, 2019. Resp. at 26. Plaintiff maintains that he "provided testimony numerous times which provided evidence as to how each practice exceeded three hours on both August 19 and August 20, 2019," and Plaintiff also points to the statements and testimony of witness Jacob Cole, the former student-athlete who was also a First-Year on the Ithaca College football team. Resp. at 23.

### a.  August 19, 2019

Defendants assert that no student-athlete was on the field for more than two hours and forty minutes on August 19, 2019. Mot. at 9. Defendants notably point to Jacob Cole's testimony that he practiced for "about three hours" on August 19, 2019, Dkt. No. 42-3 ("Cole Deposition") at 60:13-16, despite his declaration that there was not a two and one-half hour team or position meeting in the morning and that practice did not begin as late as 11:00 AM, Cole Decl. ¶¶ 4–5.

Plaintiff, meanwhile, maintains that practice did not begin as late as 11:00 AM, Resp. at 24, and Plaintiff supports this assertion via Coach Sean Reeder's testimony "that morning

meetings only lasted ten to fifteen minutes," <u>id.</u> Furthermore, Plaintiff asserts that Defendant

Swanstrom does not know the length nor end time of practice on August 19, 2019—while his

declaration from November 23, 2022, stated that practice was two hours and forty minutes and

concluded at 1:40 PM, his testimony from June 29, 2022, stated that practice lasted two hours

and fifty minutes and concluded at 1:50 PM. <u>Id.</u> at 11.

### b.  August 20, 2019

Defendants assert that, "although the total elapsed time of the on-field practice on August

20 was three hours and five minutes, no student-athlete participant was on the practice field for

more than three hours." Mot. at 10. Defendants maintain that Plaintiff, in particular, only

practiced for two hours and forty-five minutes (i.e., from 9:05 AM until 11:50 AM) that day. <u>Id.</u>

Defendants specifically note that Plaintiff and the other First-Years who were asked to practice

with the Returners were held in the team meeting that morning after the other First-Year players

went onto the practice field. <u>Id.</u> Accordingly, Defendants assert that Plaintiff did not join First-

Year practice until 9:05 AM and then continued to practice until all Returners and the remaining

First-Year players were dismissed at 11:50 AM. <u>Id.</u>

However, Plaintiff alleges that he began practicing with the First-Years at 8:45 AM and

was "forced" to practice until "at least" 12:30 PM, for a total of three hours and forty-five

minutes. Resp. at 14. Plaintiff asserts that players who were practicing with both the First-Years

and Returners were not held in position meetings to ensure that they did not practice for more

than three hours, contrary to the declarations of both Defendant Swanstrom and Coach Sean

Reeder. <u>Id.</u> at 12–13. Plaintiff also notes that the testimony of Sean Reeder and Jacob Cole

supports his claim that Defendant Swanstrom kept players behind the scheduled practice by

having players stay longer to run as a form of punishment. <u>Id.</u>

The Court agrees with Defendants that "[i]t has long been the law in the Second Circuit that a party may not avoid summary judgment by submitting a declaration in opposition to summary judgment that contradicts his sworn deposition testimony." Reply at 8 (citing Fosamax Products Liability Litig., 707 F.3d 189, 193 (2d Cir. 2013)); see also Fed Deposit Ins. Corp. v. Murex LLC, 500 F. Supp. 3d 76, 94 (S.D.N.Y. Nov. 12, 2020) ("Under the sham affidavit doctrine, 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'"). However, this rule does not apply "where the subsequent sworn statement either does not actually contradict the affiant's prior testimony or addresses an issue that was not, or was not thoroughly, explored in the deposition." Good, 2022 WL 1555238, at *20 (quoting Fed Deposit Ins. Corp, 500 F. Supp. 3d at 94–95).

The Court finds that Plaintiff's deposition, when viewed in the light most favorably to Plaintiff, does not actually contradict his prior testimony. Plaintiff "simply stated he did not know the exact times, on a clock, for when practice started and ended." Resp. at 23. Regarding the length of practice on August 19, 2019, Plaintiff testified that "[t]here are no clocks available and I was not wearing a watch, so it would be impossible for me to know the exact time while I'm on the field." Reply at 7 (citing Dkt. No. 39-3 ("Guerra Deposition") at 81:15-18). Regarding the end of practice on August 20, 2019, Plaintiff testified that, "[a]s [he had] mentioned before, [he] did not have a watch or phone at practice[,] [s]o [he] was really unaware to be able to [testify to] the specific time that the returners practice ended." Id. (citing Guerra Dep. 94:16-19). These statements are not obviously inconsistent with Plaintiff's inference that the practices must have violated 2019 Bylaws based on their context and surrounding events. Although it is true that jurors may find Plaintiff's deposition testimony and declaration to be

incongruous, it is ultimately their job "to make that credibility determination"—it "is not part of the Court's role in deciding summary judgment." Good, 2022 WL 1555238, at *20; see also. Fed Deposit Ins. Corp, 500 F. Supp. 3d at 95 ("If a declarant's prior testimony and summary judgment declaration are not in direct contradiction, mere tensions or inconsistencies go to credibility, not admissibility, and credibility determinations are not proper at summary judgment.").

Because (1) there appears to be a genuine dispute over the length of the practices, (2) Plaintiff's testimony and deposition are not obviously in conflict, and (3) Defendants have not otherwise shown that Plaintiff's testimony would be inadmissible, the Court finds that there is not a sufficient and undisputed factual basis for deciding whether the length of football practices on August 19, 2019, and August 20, 2019, constituted a breach of Defendants duty towards Plaintiff.

### 2. Classification of Plaintiff's First-Year and Returner Practices

It is undisputed that Plaintiff practiced with the First-Years and the Returners on August 19–21, 2019. However, Plaintiff and Defendants dispute whether the drills on each day constituted more than one practice per day, which would violate the 2019 Bylaws.

Defendants argue that "[t]he fact that Mr. Guerra stayed on the practice field when the Returning players joined the practices did not transform the practice into 'two-a-day' practices," as he simply continued to practice within the three-hour limitation in accordance with the 2019 Bylaws. Mot. at 11–12. Defendants cite to the report of Daniel Dutcher, Ithaca College's NCAA expert witness, who was the Vice President/Chief of Staff for Division III at the time the NCAA bylaws were amended to ban "two-a-day" practices. Id. at 12. This report discusses the specific guidance issued by the NCAA on "two-a-days" that notably mentions an on-field practice may consist of separate on-field sessions: "Practicing with different groups of players from the team

17

does not constitute different practices." Reply at 10.

Moreover, Defendants point out that Plaintiff testified that he did not leave the practice field and come back out later in the day for a second practice; rather, he took a short break when the Returners came onto the field and then continued to practice. Mot. at 18. Defendants cite to the declarations of both Defendant Coach Swanstrom and Daniel Dutcher, which stated that the College's practices did not violate the bylaw with respect to "two-a-day" practices. Id. Defendants additionally cite to the deposition of Plaintiff's NCAA expert, Wes Turner, who acknowledged that "the preseason practices did not constitute 'two-a-days' so long as no student-athlete practiced for more than three continuous hours." Id. at 18–19. Accordingly, Defendants assert that "Plaintiff's supposed NCAA expert Wes Turner fails to dispute any of the statements in Mr. Dutcher's report and declaration." Reply at 10.

However, Plaintiff asserts "the issue is not whether [the First-Year and Returner] practices were 'two-a-days,' but whether they constituted more than one on-field practice," Resp. at 9, and maintains that there are factual issues as to the definition of what constitutes more than one practice that should be left for the jury to decide, id. at 25. Plaintiff alleges that Defendants "forced" him to practice twice each day from August 19–21, 2019, and that Defendants "made these practices occur back-to-back in order to appear compliant with the NCAA Bylaws." Id. at 26. Plaintiff points out that his expert, Wes Turner, testified that these practices "did not fit the definition of 'two-a-days' but that they were two separate practices" in violation of the applicable NCAA bylaw. Id. at 25.

Moreover, Plaintiff maintains that he "was never instructed, nor given the impression, that [practicing with the First-Years and the Returners] would constitute one continuous practice." Guerra Corrected Decl. ¶¶ 10, 14, 19. Plaintiff references the deposition of Susan

18

Bassett, Defendant Ithaca College's athletic director, who stated that two practices under the 2019 Bylaws means two separate sessions, each having a separate start and stop time. Resp. at 26. Plaintiff points to the schedule created by Defendants to illustrate that practices for the First-Years and the Returners were scheduled with separate start and end times. Id.

Given that Plaintiff and Defendants dispute whether Plaintiff practicing with First-Years and Returners on August 19–21, 2019, constitutes more than one practice in violation of 2019 Bylaws, the Court finds that this question is best left for the jury to determine after hearing the aforementioned expert testimony and weighing the evidence on each side.

### 3. Required Recovery Time

Plaintiff claims that he did not have the requisite three hours of rest between the conclusion of practice and weightlifting per the 2019 Bylaws on August 20, 2019. Resp. at 9–10. Plaintiff asserts that "practice ended at approximately 12:30" and that he then attended the First-Year weightlifting session at 2:15 PM. Id.

Defendants counter Plaintiff's assertion with the testimony of Coach Sean Reeder, who stated that players were told to attend a different weightlifting session if necessary to maintain the three-hour rest period. Reeder Dep. at 56:14–17. Defendants maintain that Plaintiff was instructed to attend the 3:15 PM session for Returners, which would have provided more than the requisite three hours of rest between practice and weightlifting. Mot. at 11.

Plaintiff and Jacob Cole maintain that they were not told to attend the Returner's 3:15 PM session, and consequently attended the 2:15 session. Resp. at 14. Further, Plaintiff states that even if he was told to attend the Returners session, he still would not have met the required three hours of recovery time since he was "forced" to practice until "at least" 12:30 PM. Id.

Drawing all inferences in the light most favorable to Plaintiff, the Court finds that there is

not a sufficient, undisputed factual basis for determining whether Defendants provided Plaintiff

with sufficient recovery time on August 20, 2019. The Court agrees with Plaintiff that genuine

disputes of material fact exist regarding whether Plaintiff was instructed to attend weightlifting

with the Returners, and, additionally, regarding whether attending this session would nonetheless

have provided Plaintiff with less than the required three hours of recovery time if practice did not

end until at least 12:30 PM.

### C. Causal Connection between Defendants' Alleged Breach and Plaintiff's Injury

To demonstrate a *prima facie* case of negligence, a plaintiff "must generally show that

the defendant's negligence was a substantial cause of the events which produced the injury."

Derdiarian v. Felix Contr. Corp., 51 N.Y.2d 308, 315 (1980) (first citing Nallan v. Helmsley-

Spear, Inc., 50 N.Y.2d 507, 520 (1980); and then citing Restatement (Second) of Torts, § 431

(Am. L. Inst. 1965)). Put another way, a plaintiff must show that a defendant's negligent act or

inaction—*in relation to the applicable duty of care owed by the defendant to the plaintiff*—"may

be said to constitute a substantial cause of the events which produced the injury." See Benitez, 73

N.Y.2d at 659 (internal citations omitted) (emphasis added).

While a plaintiff must adduce sufficient evidence that a defendant breached a duty of

reasonable care which can be said to have proximately caused the plaintiff's injuries, see id. at

654, a plaintiff does not need to demonstrate "that the precise manner in which the accident

happened, or the extent of injuries, was foreseeable," Derdiarian, 51 N.Y.2d at 315 (citing

Restatement (Second) of Torts, § 435(2) (Am. L. Inst. 1965)). Further, "while issues of

proximate cause are generally fact matters to be resolved by a jury, 'where only one conclusion

may be drawn from the established facts . . . the question of legal cause may be decided as a

matter of law.'" Benitez, 73 N.Y.2d at 659 (quoting Derdiarian, 51 N.Y.2d at 315). "Given the

20

unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause, once the court has been satisfied that a *prima facie* case has been established." Derdiarian, 51 N.Y.2d at 315 (internal citations omitted).

        *1.  Defendants' Conduct as a Substantial Factor in Causing Plaintiff's Injury*

Defendants first assert that the allegations concerning the length of practices on August 19, 2019, and August 20, 2019, as well as the allegation that Plaintiff had less than the required three hours of recovery time between practice and weightlifting on August 20, 2019, are irrelevant to the alleged injury that occurred on August 21, 2019. Reply at 4. Defendants acknowledge Dr. Greenwald's opinion that the cause of Plaintiff's injury was "repeated sub-concussive blows" on August 21, 2019, but point out that "[n]either his report nor his declaration states that the alleged injury incurred on August 21 had anything to do with what happened on August 19 or 20." Id. Thus, Defendants ultimately assert that Plaintiff's claim must be dismissed for lacking a causal connection between Defendants' alleged negligence on August 19, 2019, and August 20, 2019, and Plaintiff's injury on August 21, 2019, Mot. at 21.

Plaintiff, however, asserts that Defendants' violations of the 2019 Bylaws exposed him to greater risk, and were therefore the "substantial cause of plaintiff's injury." Resp. at 28. Plaintiff also contends that:

> [B]ased upon the types of drills on the schedules of Defendant Swanstrom, it is apparent that practice was a crescendo of contact with the hardest hitting drills at the end of practice. Thus, the "extra" time that plaintiff was required to practice was at the hardest hitting portions of practice and, *had he not been exposed to the extra hits in excess of three hours, plaintiff would not have suffered his injuries.*

Id. at 15–16 (emphasis added).

The Court is without a sufficient, undisputed factual basis for legal determination regarding causation. However, when viewing the facts most favorably to Plaintiff, a reasonable

jury could find that Defendants' alleged breaches—whether in isolation, or cumulatively—substantially caused Plaintiff's "traumatic brain injury" by creating dangerous conditions over and above the usual dangers inherent in football. Id. at 28. The Court therefore declines to issue summary judgment on this basis.

### 2.  Dr. Greenwald's Declaration

Defendants also assert that, even if Plaintiff could establish that Defendants violated 2019 Bylaws, "the conclusory declaration of [Plaintiff's] expert is patently insufficient to establish that any such violation was a cause of his injury." Reply at 5. Specifically, Defendants claim that Dr. Greenwald found "that the cause of Mr. Guerra's injury was the repeated sub-concussive blows on August 21," id. at 13, but that "Dr. Greenwald cannot and does not cite to when and which blows caused the alleged injury," id. at 5. Accordingly, Defendants assert that Dr. Greenwald's conclusory declaration is "insufficient and speculative" and "devoid of any explanation as to how any alleged violations of NCAA bylaws regarding the length of practice caused Mr. Guerra's injury." Id. at 13.

For the purposes of summary judgment, the Court disagrees that Dr. Greenwald's testimony and report are "devoid of any explanation as to how any alleged violations of NCAA bylaws regarding the length of practice caused Mr. Guerra's injury." Reply at 13. After reviewing Dr. Greenwald's deposition testimony and drawing all reasonable inferences in favor of Plaintiff, the Court notes that Dr. Greenwald appears to have clarified that the cause of Plaintiff's injury was "the amount of his head contact without associated time to recover from any of the injury that occurred." Dkt. No. 39-7 ("Greenwald Deposition") at 58:17–24. Plaintiff's testimony and medical history appear to serve as a sufficient factual basis for Dr. Greenwald to offer this opinion. The Court therefore finds that Dr. Greenwald's opinion is not speculative regarding causation, and declines to find that his opinion should be discredited for the purposes

of summary judgment.

Accordingly, the Court is without a sufficient, undisputed factual basis for legal determination regarding causation. The Court thus declines to issue summary judgment based on the issue of causation.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 39) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      August 28, 2023
            Albany, New York

LAWRENCE E. KAHN
United States District Judge

23